IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MELISSA A. GABRIEL,<br><br>　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br>**Commissioner of the Social Security Administration**,<br><br>　　Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. CIV-21-1121-STE<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **AFFIRMED**.

### I.　PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 27-53). The Appeals Council denied Plaintiff's request for review. (TR. 3-6). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.     THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 22, 2018, the alleged onset date. (TR. 30). At step two, the ALJ determined that Plaintiff had the following severe impairments: rheumatoid arthritis involving both shoulders with negative rheumatoid factor; systemic lupus erythematosus; lateral epicondylitis; osteoarthritis; obesity; and major depressive disorder, moderate. (TR. 30). At step three, the ALJ found that none of Plaintiff's impairments meets or medically equals any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 30-36).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform "sedentary work," as defined in 20 CFR 404.1567(a), except that the claimant can only: occasionally climb ramps and stairs, balance, and stoop; never climb ropes, ladders, and scaffolds, kneel, crouch, and crawl; must avoid exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; must avoid exposure to industrial type vibration; never reach, push, and pull overhead; as to the use of the upper extremities beneath overhead level, frequently reach, handle, finger, feel, push, and pull; independently perform multi-step tasks that require limited judgment, but unable to perform tasks involving multi-layer decision making or supervisory tasks; and interact with coworkers, supervisors, and the general public on a superficial basis, defined as brief, succinct, cursory concise communication, relevant to the task being performed.

(TR. 36). The ALJ also concluded that Plaintiff was unable to perform her past relevant work. (TR. 48).

At the administrative hearing, the ALJ presented Plaintiff's RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff, classified as a younger individual, could perform. (TR. 73-76). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 76). The ALJ adopted the VE's testimony and concluded that Plaintiff could perform jobs such as Document Preparer, (DOT #249.587-018), a sedentary, unskilled job with an SVP of 2, 27,390 of which exist in the national economy; Sorter, (DOT #739.687-182), a sedentary, unskilled job with an SVP of 2, 40,330 of which exist in the national economy, and Product Inspector, (DOT #669.687-014), a sedentary, unskilled job with an SVP of 2, 32,500 of which exist in the national economy. Accordingly, the ALJ determined Plaintiff was not disabled at step five based on her ability to perform the identified jobs. (TR. 50-53).

### III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support

3

a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.   ISSUES PRESENTED

Plaintiff contends her impairments meet or equal Listing 14.02 or 14.09. In related issues, she contends the ALJ failed to properly weigh the medical evidence and failed in his assessment at step five of the sequential evaluation by identifying one job she could not perform, leaving fewer jobs than necessary to constitute a "significant number." (ECF No. 19:8-15).

## V.   ANALYSIS

### A.   Requirements to Meet Listings 14.02 and 14.09

The medical record supports Plaintiff's contention that she had been diagnosed with systemic lupus erythematosus (SLE) and rheumatoid arthritis (RA).[1] In fact, the ALJ found both conditions to be severe at step two. But a diagnosis alone is not sufficient to meet or equal a listed impairment. And the ALJ's thorough analysis of the evidence supports his conclusion that Plaintiff's severe impairments do not meet or equal the Listings involved.

---

[1] The requirements to meet the Listings for RA and SLE are virtually identical because both are autoimmune disorders.

Systemic lupus erythematosus is described generally as a chronic inflammatory disease that is frequently accompanied by constitutional symptoms or signs such as severe fatigue, fever, malaise, or involuntary weight loss. It can affect major organ or body systems including the respiratory, cardiovascular, renal, or hematologic systems, and the skin. Additionally, it can result in neurologic, mental, mood, cognitive, or immune system disorders. Immunologically, there is an array of circulating serum auto-antibodies and pro-and anti-coagulant proteins that may occur in a highly variable pattern. *See* 20 C.F.R. Pt. 404, subpt. P, Appendix 1 § 14.00 (D)(6).

Rheumatoid arthritis is also a chronic inflammatory disease. Inflammation of major joints in an upper or a lower extremity may be the dominant manifestation causing difficulties with walking or fine and gross movements; there may be joint pain, swelling, and tenderness. RA may also affect other joints or cause limitation in walking or fine and gross movements. However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, and involuntary weight loss), inflammatory arthritis may result in an extreme limitation. *See* 20 C.F.R. Pt. 404, subpt. P, Appendix 1 § 14.00D6

To meet Listing 14.02, a claimant must exhibit involvement of two or more organs or body systems with one of the organs or body systems at least moderately severe. Additionally, the claimant must exhibit at least two of the constitutional signs. § 14.02(A).

Alternatively, a claimant can meet this listing if she exhibits repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked

level: limitation of activities of daily living, limitation in maintaining social functioning, or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. § 14.02(B).

Listing 14.09(B) for RA requires inflammation or deformity in one or more major joints of an upper or lower extremity along with the same requirements as SLE: involvement of two or more organs or body systems, with one at least moderately severe, and at least two constitutional symptoms or signs such as fatigue, fever, malaise, or involuntary weight loss.

Plaintiff contends she "comes close to equaling Listing 14.09(B)" because of her diverticulitis combined with her osteonecrosis or avascular necrosis or avascular necrosis of her right knee. (ECF No. 19:9).

Plaintiff's support for her first assertion of error is summed up in two sentences:

> Claimant's complications with diverticulitis, requiring colectomy . . .in addition to joint problems and persistent fatigue, would meet or equal the requirements of two organs/body systems being affect[ed].
>
> . . .
>
> With Claimant's complications from the diverticulitis requiring surgery, she comes close to equaling Listing 14.09B, particularly with osteonecrosis or avascular necrosis of her right knee[.]

(ECF No. 19:9).

At step three, the claimant bears the burden of proving she meets or equals one of the presumptively disabling impairments. *See Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) ("To show that an impairment or combination of impairments meets the requirements for a listing, a claimant must provide specific medical findings that support

each of the various criteria for the impairment.") (Citation omitted). *See also*, *Asian v. Colvin*, 637 F. App'x 509 (10th Cir. 2016) (rejecting claimant's argument where claimant failed to cite any medical records confirming his impairments met all the Listing's criteria).

Although Plaintiff summarized the medical evidence, she did not tie any medical records to the criteria of the Listings. Thus, her cursory argument is insufficiently developed. *See Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (holding that perfunctory complaints that fail to frame and develop an issue are insufficient to invoke appellate review). Accordingly, this Court deems Plaintiff's first assignment of error waived. *See Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009) (holding that claimant had waived argument unsupported by developed argumentation).

What is more, the ALJ thoroughly considered the evidence as it related to the Listing for RA and concluded that the medical evidence does not support a conclusion that Plaintiff's impairments met or equaled the listing. (TR. 31-31). For example, the ALJ considered the results of the initial psychological evaluation administered by Kara Rodgers, Psy.D., and the evaluation of Dr. Stephanie Crall, Ph.D., at the reconsideration level. These agency professionals considered the "paragraph B" criteria for Listing 12.04 for depression and determined Plaintiff had no greater than moderate limitation in any of the broad functional areas that roughly correspond to the criteria in Listing 14.02(B). (TR. 31-34). Having reviewed the ALJ's decision, the Court agrees with the Commissioner that the ALJ's decision at step three is supported by substantial evidence.

**B.     The ALJ's RFC**

Plaintiff's second argument is actually a challenge to the RFC formulated by the ALJ. The ALJ's RFC limited Plaintiff to sedentary work with frequent handling, fingering, and feeling. (TR. 36). Plaintiff contends the ALJ's RFC should have limited her to occasional "handling" based on some of the medical opinions, the authors of which found her ability to grasp to be somewhat limited. (ECF No. 19:9-11).

As Plaintiff notes, the record contains several medical opinions regarding Plaintiff's functional limitations. Some opinions were obtained when she applied for temporary benefits through her private disability insurance. In all, seven medical opinions are included in the record.

The ALJ found the August 2018 opinion proffered by Penny Chong, M.D. to be generally consistent with the medical record and generally persuasive. Dr. Chong stated Plaintiff could frequently "manipulate and simple grasp," and occasionally "firm grasp." (TR. 40-41; 671).

The ALJ also found the opinion of Timothy Huettner, M.D., who performed an independent medical examination on July 9, 2019, to be generally consistent with the medical record and generally persuasive. Like Dr. Chong, Dr. Huettner determined Plaintiff could frequently "simple grasp" and occasionally "firm grasp." (TR. 41; 693).

Kelly Clarkson, APRN, performed a consultative examination. Nurse Clarkson assessed grip strength as 3/5. (TR. 1432). But ultimately, Nurse Clarkson found Plaintiff could effectively oppose the thumb to the fingertips, manipulate small objects, and effectively grasp tools such as a hammer. (TR. 43-44; 1437). The ALJ found Nurse

Clarkson's opinion to be somewhat consistent and somewhat persuasive. But the portion of Nurse Clarkson's opinion that the ALJ discounted had nothing to do with grasping, handling, and manipulating small items. Rather, the ALJ rejected Nurse Clarkson's finding that Plaintiff could constantly sit, stand, walk, and reach overhead. The ALJ's RFC was much more limiting—a finding that worked in Plaintiff's favor. (TR. 47). The ALJ found the remainder of the opinions to be inconsistent with findings from the consultative examiners and, therefore, unpersuasive. (TR. 48).

Plaintiff did not challenge the ALJ's assessment of the medical opinions. Rather, she argued the opinions could have supported an RFC limiting her to occasional grasping. Clearly, however, the three opinions upon which the ALJ relied constitute substantial evidence in support of the RFC for sedentary work with frequent handling. To arrive at a different conclusion, this Court would have to re-weigh the evidence—an exercise precluded under the regulations. As noted above, the role of this Court is limited to "review[ing] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014. "[I]n making this determination, [this Court] cannot reweigh the evidence or substitute [its] judgment for [that of] the administrative law judge[]." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016). Thus, the ALJ's opinion is not subject to reversal on this ground.[2]

---

[2] Plaintiff's subsidiary argument—that certain jobs identified at step five should be precluded based on a limitation to occasional grasping that was not included in the RFC—fails for the same reason: the ALJ's decision is supported by substantial evidence.

9

## C. The ALJ's Step Five Decision

Plaintiff's final argument is based on her assertion that the total number of the three jobs identified by the VE—100,200—does not constitute a "significant number" of jobs existing in the national economy. Plaintiff contends the number of jobs is further reduced because her mental RFC would preclude her from performing the document preparer job.

The DOT rates the reasoning level of the document preparer job as level 3. Reasoning level 3 requires the ability to deal with "problems involving several concrete variables in or from standardized situations." (ECF No. 19:14). The ALJ found Plaintiff's, mental RFC would allow her to "independently perform multi-step tasks that require limited judgment," but that she would be "unable to perform tasks involving multi-layer decision making or supervisory tasks." *See supra* at 2.

Plaintiff's contention that Reasoning level 3 requires greater reasoning ability than her RFC would accommodate is unpersuasive. In his hypothetical question to the VE, the ALJ described, and the VE considered, sedentary, unskilled jobs. (TR. 75-76). The ALJ asked if any of the three jobs identified by the VE would be affected if the hypothetical individual were limited to understanding, remembering, and carrying out simple instructions, making simple work-related decisions and dealing with only occasional changes in work processes and environment. The VE testified that such limitations would not affect the hypothetical person's ability to perform any of the jobs she had previously identified, including the document preparer job. (TR. 76). The regulations allow the Commissioner to rely on a VE for her knowledge or expertise. *See* 20 C.F.R.

404.1560(b)(2). What is more, the ALJ considered the extent to which the VE's testimony could be considered inconsistent with information in the DOT and determined she had based her testimony on her own knowledge, experience, and training. (TR. 53).

But even if Plaintiff were unable to perform the document preparer job, the 72,830 remaining jobs would constitute a "significant number." This Court, as well as other courts in this circuit, have found far fewer job numbers to constitute a "significant number." See e.g., Lynn v. Colvin, 637 F. App'x 495, 499 (10th Cir. 2016) (finding 24,900 to be a significant number); Robben v. Saul, No. CIV-173-SM, 2021 WL 433202, *4 (W.D. Okla. Feb. 8, 2021) (finding 40,000 jobs to be a significant number); Sly v. Berryhill, No. CIV-17-781-BMK, 2018 WL 1954836, *3 (W.D. Okla. Apr. 25, 2018) (finding 32,000 jobs to be a significant number of available jobs). Thus, Plaintiff's third assignment of error is without merit.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on August 30, 2022.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE